# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Dana D. Kruckow,                                    Civil No. 16-2418 (DWF/DTS)

            Plaintiff,

v.                                                  **MEMORANDUM**
                                                    **OPINION AND ORDER**

Merchants Bank, Rushford State Bank,
Craig Schroeder, individually, and Paul A.
Kruckow, individually,

            Defendants.

---

Thomas J. Lyons, Jr, Esq., Consumer Justice Center P.A., counsel for Plaintiff.

Charles E. Nelson, Esq., Kathryn E. Wendt, Esq., and Kirstin D. Kanski, Esq., Lindquist & Vennum LLP; and Patrick D. Newman, Esq., Bassford Remele, counsel for Defendant Merchants Bank.

John P. Boyle, Esq., and Sarah E. Doerr, Esq., Moss & Barnett, PA, counsel for Defendant Rushford State Bank.

Christopher J. Haugen, Esq., and Kristin B. Rowell, Esq., Anthony Ostlund Baer & Louwagie P.A., counsel for Defendant Craig Schroeder.

Charles A. Bird, Esq., and Grant M. Borgen, Esq., Bird, Jacobsen & Stevens, P.C., counsel for Defendant Paul A. Kruckow.

---

## INTRODUCTION

This case is before the Court on Defendants' Motions to Dismiss. (Doc. Nos. 45, 50, 58, 62.) The plaintiff brought this action after learning in divorce proceedings that her husband had obtained a number of loans by allegedly forging her signature as a

co-signer. After this revelation, the plaintiff filed suit against the banks, the loan officer, and her husband alleging violations of the Fair Credit Reporting Act ("FCRA")[1] as well as various state law claims. The defendants have individually moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim. As explained in more detail below, the Court denies the defendants' motions to dismiss for lack of subject matter jurisdiction, and the Court grants in part and denies in part the defendants' motions to dismiss for failure to state a claim.

## BACKGROUND

On September 21, 2016, Plaintiff Dana Kruckow (generally, "D. Kruckow") filed an amended complaint (Doc. No. 35) against Defendants Merchants Bank ("Merchants"), Rushford State Bank ("Rushford Bank"), Craig Schroeder, and her husband Paul Kruckow (generally, P. Kruckow") after she learned that P. Kruckow obtained a number of loans by allegedly forging her signature as a co-signer. Craig Schroeder was the loan officer for all of the loans (he moved from Merchants to Rushford Bank).[2] Much of D. Kruckow's Amended Complaint retraces her steps investigating the alleged fraud.

---

[1]    15 U.S.C. § 1681, *et seq.*

[2]    The Court cites to: Plaintiff's Amended Complaint (Doc. No. 35) as "Am. Compl."; Merchants' Memorandum in Support of its Motion to Dismiss (Doc. No. 47) as "Merchants Memo." and Reply Brief (Doc. No. 72) as "Merchants Reply"; P. Kruckow's Memorandum in Support of his Motion to Dismiss (Doc. No. 53) as "P. Kruckow Memo." and Reply Brief (Doc. No. 73) as "P. Kruckow Reply"; Rushford Bank's Memorandum in Support of its Motion to Dismiss (Doc. No. 60) as "Rushford Memo." and Rushford Bank's Reply Brief (Doc. No. 71) as "Rushford Reply" Schroeder's Memorandum in Support of his Motion to Dismiss (Doc. No. 64) as "Schroeder Memo." and Schroeder's Reply Brief (Doc. No. 75) as "Schroeder Reply"; D. Kruckow's Memorandum in Opposition to Defendants' Motions to Dismiss (Doc. No. 68) as "Opp.".

After notifying the banks, Rushford Bank agreed not to hold D. Kruckow responsible for the outstanding loans, and Merchants informed her that there was no outstanding liability.

As relevant here, Plaintiff brought claims related to three credit reports about D. Kruckow obtained by Defendants.  The first two credit reports—February 8, 2013, and November 8, 2013—were obtained by Schroeder during the life of the allegedly fraudulent loans held by Merchants and Rushford Bank, respectively.  The last credit report—October 31, 2014—was allegedly obtained by Schroeder for P. Kruckow to use for his divorce petition, which was filed in mid-December 2014.  Plaintiff's Amended Complaint contains claims for violations of FCRA and state law claims for invasion of privacy and negligence.  Plaintiff seeks to hold Defendants jointly liable through a claim for civil conspiracy and to hold the banks vicariously liable for Schroeder's actions. Defendants have moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim.

## DISCUSSION

### I.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### A.    Legal Standard

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  To survive a motion under Rule 12(b)(1), the party asserting jurisdiction has the burden of proof.  *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).  "Subject-matter jurisdiction is a threshold requirement which must be assured in every federal case."  *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990).

A Rule 12(b)(1) motion may challenge a plaintiff's complaint either on its face or on the factual truthfulness of its averments. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). When a defendant brings a facial challenge—that is, even if the allegations were true, they lack an essential element for jurisdiction—a court reviews the pleadings alone and assumes the allegations are true. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *accord Osborn*, 918 F.2d at 729 n.6. In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and weigh the accuracy of the allegations. *Titus*, 4 F.3d at 593; *accord Osborn*, 918 F.2d at 729 n.6.

### B.    Subject Matter Jurisdiction and *Spokeo*

Defendants argue that the Court does not have jurisdiction because D. Kruckow does not have standing to pursue her claims. Federal courts are courts of limited jurisdiction. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546-47 (2016). Article III of the Constitution limits the courts' jurisdiction to "Cases" and "Controversies." *Id.* at 1547. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Id.* Standing has three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Defendants argue that D. Kruckow has not shown that she suffered a concrete injury. In *Spokeo*, the Supreme Court reiterated that an injury in fact requires both a concrete and particularized injury. In addressing whether an injury is concrete, the question is whether the injury is "real" and "not abstract." *Id.* at 1548. While real

4

injuries are most closely associated with tangible harm, the harm can also be intangible. *Id.* at 1549. When evaluating intangible harm, "it is instructive to consider whether [the] alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* As the Supreme Court noted, Congress is well positioned to elevate intangible harms to concrete injuries. *Id.* But the Court cautioned against concluding that a plaintiff will automatically demonstrate an injury in fact merely by showing that a statute authorized her to sue. *Id.* That is, the plaintiff must allege more than a "bare procedural violation" of that statute. *Id.* at 1550.

     D. Kruckow alleges that she was injured because Defendants invaded her privacy by obtaining a consumer report without a permissible purpose. D. Kruckow argues that unauthorized access of information has long constituted a concrete injury. Courts have struggled with deciding whether a plaintiff has suffered a concrete injury when a defendant fails to follow FCRA's statutory prerequisites to obtain the plaintiff's information. *Compare Shoots v. iQor Holdings US Inc.*, Civ. No. 15-563, 2016 WL 6090723, at *4 (D. Minn. Oct. 18, 2016) ("By contending that non-compliance with one provision of the FCRA automatically renders a defendant's subsequent actions an invasion of privacy, [the plaintiff] would raise every technical violation of any statute to the realm of a major substantive harm."), *with Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 636 (E.D. Va. 2016) ("[W]here a defendant fails to comply with statutory prerequisites protecting the plaintiff's privacy, the plaintiff's privacy has been unlawfully invaded and he has suffered concrete injury, regardless of actual damages.").

In arguing that Plaintiff did not suffer any concrete injuries, Defendants rely on *Reed v. Experian Information Solutions, Inc.*, 321 F. Supp. 2d 1109 (D. Minn. 2004). But in *Reed*, the court concluded on a motion for summary judgment that the plaintiff had not demonstrated actual damages or a willful violation of FCRA. *Id.* at 1114 ("The remainder of plaintiff's FCRA claims fail[s] for want of evidence of either harm or willful noncompliance with the Act."). Thus, *Reed* has little to do with whether a consumer suffers a concrete injury when an entity obtains the consumer's credit report without a permissible purpose. [3]

Here, Plaintiff has adequately pleaded a concrete injury to her privacy. Congress has allowed a person to access consumer reports but only when the person has a permissible purpose. Requiring a proper purpose works as bulwark against intrusions into the sensitive information contained in a consumer report. Thus, when a plaintiff alleges that the person obtained the plaintiff's consumer report without a permissible purpose, the plaintiff has adequately alleged a concrete injury to her privacy. *See, e.g.*, *In re Ocwen Loan Servicing LLC Litig.*, Civ. No. 16-483, 2017 WL 1289826, at *5 (D. Nev. Mar. 3, 2017); *Firneno v. Nationwide Mktg. Servs., Inc.*, Civ. No. 14-10104, 2017 WL

---

[3]     Defendants also rely on *Braitberg v. Charter Communications, Inc.*, 836 F.3d 925 (8th Cir. 2016). In that case, the consumer sued a cable company after it retained consumer information for too long in violation of a federal statute. In concluding that the consumer did not suffer a concrete injury, the court of appeals noted that the plaintiff had not shown that that the cable company disclosed the information, an outside party accessed the information, the cable company used the data, or that there was an increase in risk of harm from the retention of the data. *Id.* at 930. That case, however, is distinguishable because it was premised on the cable company legally obtaining the information in the first place. *See id.* Here, instead, D. Kruckow's claims are premised on Defendants' allegedly improper purpose in obtaining her consumer report.

85831, at *3 (E.D. Mich. Jan. 10, 2017); *Perrill v. Equifax Info. Servs., LLC*, 205

F. Supp. 3d 869, 875 (W.D. Tex. 2016); *see also Engebretson v. Aitkin Cty.*, Civ.

No. 14-1435, 2016 WL 5400363, at *4 (D. Minn. Sept. 26, 2016) (finding that the

plaintiff had standing to sue under the DPPA for claims based on Defendants viewing her

motor vehicle records without a proper purpose). *But see Bultemeyer v. CenturyLink,

Inc.*, Civ. No. 14-02530, 2017 WL 634516, at *3 (D. Ariz. Feb. 15, 2017) (finding the

plaintiff did not have standing merely because her consumer report was obtained without

a proper purpose). Because D. Kruckow has pleaded that Defendants accessed her

consumer report without a permissible purpose, she has adequately alleged a concrete

injury.[4] The Court therefore denies Defendants' Motions to Dismiss for Lack of Subject

Matter Jurisdiction.

## II.    Motion to Dismiss for Failure to State a Claim

Defendants individually moved to dismiss Plaintiff's Amended Complaint, which

brings claims for: (1) violation of FCRA; (2) invasion of privacy-seclusion;

(3) negligence; (4) vicarious liability; and (5) civil conspiracy.[5] While Defendants

moved individually, many of their arguments overlap or are duplicative, and thus the

Court will address the arguments together.

---

[4]    In addition, D. Kruckow alleged that her credit score was adversely impacted by
the credit reports. (Am. Compl. ¶ 63.) This separate allegation also demonstrates that
Plaintiff suffered a concrete injury. *Adams v. Fifth Third Bank*, Civ. No. 16-00218, 2017
WL 561336, at *3 (W.D. Ky. Feb. 10, 2017) ("A low credit score may have tangible,
real-world consequences, making it more difficult for Plaintiffs to obtain credit cards,
auto loans, and mortgages.").

[5]    Plaintiff has also brought a claim against only P. Kruckow for invasion of
privacy-appropriation, which P. Kruckow has not moved to dismiss.

## A.    Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

### B.     FCRA Claim

"To state a claim for civil liability based on Section 1681b, a plaintiff must allege both that the defendant used or obtained the plaintiff's [consumer] report for an impermissible purpose, and that the violation was willful or negligent." *Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d 159, 166 (S.D.N.Y. 2014) (collecting cases).

Defendants take the position that D. Kruckow failed to plausibly allege that her report was obtained for an impermissible purpose. In her Amended Complaint, Plaintiff has brought FCRA claims against the banks and Schroeder for all three reports and against P. Kruckow for only the November 2013 and October 2014 reports. (Am. Compl. ¶¶ 109-10.) D. Kruckow alleges that Schroeder knew about P. Kruckow's fraud and thus Schroeder knew that he did not have a permissible purpose for the February 2013 and November 2013 reports. Additionally, D. Kruckow alleges that P. Kruckow asked Schroeder to pull D. Kruckow's credit report in October 2014 to help P. Kruckow with his divorce petition. And, according to D. Kruckow, because Schroeder knew that he did not have a permissible purpose to pull D. Kruckow's consumer report, that knowledge is imputed to the banks. (*See* Am. Compl. ¶¶ 52, 59.)

### 1.     February and November 2013 Reports

D. Kruckow has failed to plausibly allege a FCRA violation for the February and November 2013 credit reports. D. Kruckow's FCRA claims against the banks and Schroeder for the February and November 2013 reports turn on whether Schroeder knew about the forgeries. D. Kruckow alleges (on information and belief) that Schroeder "was aware of and essentially in on the fraud and forgery." (Am. Compl. ¶ 25.) Defendants

counter that Schroeder had no idea about the fraud.  Thus, the Court is faced with the

alternative scenarios that Schroeder knew and was complicit in the scheme or that he was

not.  *See McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015), *cert. denied sub*

*nom. McDonough v. Anoka Cty., Minn.*, 136 S. Ct. 2388 (2016).  The Court concludes

that D. Kruckow's scenario is implausible in light of the alternative.  For D. Kruckow's

scenario to be plausible, she would have had to allege why Schroeder would have

participated in such a scheme.  *See id.* at 954-55 (affirming that the plaintiff had failed to

plausibly plead a claim for improper access of his driver information when the plaintiff

did not allege facts "that explain why he would garner Law Enforcement Does' interest").

In fact, D. Kruckow seems to acknowledge that Schroeder had nothing to gain.  (*See* Am.

Compl. ¶ 83i (Schroeder:  "As far as me personally, there's nothing for me to gain on any

of it, ya know.").)  Thus, the Court concludes that D. Kruckow has failed to adequately

plead FCRA claims for the February 8, 2013 and November 8, 2013 reports because

those FCRA claims were premised on Schroeder knowing about the fraud.

D. Kruckow's two principal arguments to the contrary are unpersuasive.  First,

Plaintiff argues that Schroeder and the banks did not have a permissible purpose to obtain

the consumer reports because Plaintiff never actually agreed to the loans.  And second,

D. Kruckow argues that even if Schroeder and the banks had a permissible purpose to

continue monitoring D. Kruckow's credit as part of an ongoing loan, Schroeder and the

banks exceeded that purpose when they performed a more detailed, hard pull of

Plaintiff's credit (which appears on a credit report) rather than a less detailed, soft pull

(which does not).

First, even if D. Kruckow did not consent to the loans, the banks and Schroeder have not violated FCRA unless they lacked a reasonable belief that they had a permissible purpose to obtain the credit report.  *See* 15 U.S.C § 1681(a)(3).  Plaintiff cites to *Andrews v. TRW, Inc.*, 225 F.3d 1063 (9th Cir. 2000) for the proposition that a business does not have a permissible purpose when an identity thief causes the business to obtain the victim's consumer report.  *Id.* at 1067, *rev'd on other grounds*, 534 U.S. 19 (2001).[6]  But Courts are split on this issue.  *Compare Bickley v. Dish Network, LLC*, 751 F.3d 724, 732 (6th Cir. 2014) (granting summary judgment for a business where an imposter caused the business to obtain in good faith the victim's credit report), *and Hudson v. Babilonia*, 192 F. Supp. 3d 274, 299 (D. Conn. 2016) (granting summary judgment on FCRA claims for reports tied to a fraudulent loan when the lender had "no reason to believe the loan was fraudulent"), *with Vasquez-Estrada v. Collecto, Inc.*, Civ. No. 14-01422, 2015 WL 6163971, at *7 (D. Or. Oct. 20, 2015) (denying summary judgment because there was a genuine issue of fact regarding whether the debt collector was on notice that the debt was invalid), *and Rand v. Citibank, N.A.*, No. 14-CV-04772 NC, 2015 WL 510967, at *3-4 (N.D. Cal. Feb. 6, 2015) (denying a motion to dismiss because the bank knew or should have known that the plaintiff did not initiate the transaction because the identity thief provided the wrong social security number and the plaintiff had been a long-time customer of the bank).  Recognizing the split, the Court

---

[6]     *Andrews* is also distinguishable because it dealt with a consumer reporting agency and not a business.  *See Bickley v. Dish Network*, LLC, 751 F.3d 724, 732 (6th Cir. 2014) ("As *Andrews* addressed a different standard and credit-agency focused issues, which are not raised here, we do not find the court's dicta to be persuasive or relevant to the present inquiry.").

concludes that the better view is that a business does not violate FCRA when an identity thief causes the business to obtain a credit report. Indeed, having the credit report pulled will likely be the first alarm to the victim that her identity has been stolen. *Cf. Bickley*, 751 F.3d at 727 (noting that Dish contacted the plaintiff to inform him that someone had tried to open an account in his name and that the credit report helped prevent the account from being opened). Like the Sixth Circuit in *Bickley*, this Court refuses to interpret FCRA in such a way that it actually punishes businesses for preventing identity theft by obtaining a credit report. *See id.* at 732 ("We reject the contention that a company, dealing with an imposter purporting to be the consumer, should be held liable when the company attempts in good-faith to verify the consumer's identity and eligibility for commercial services. To hold otherwise would twist the underlying purpose of the statute and punish companies for preventing identity theft."). Thus, the Court concludes that when a borrower brings a FCRA claim based on consumer reports tied to a loan obtained through fraud or identity theft, the plaintiff must plausibly allege that the defendants did not reasonably believe that the plaintiff had agreed to the loans.

Here, Plaintiff has failed to plausibly allege that the banks and Schroeder did not reasonably believe that Plaintiff had agreed to the loans. To start, and as explained above, Plaintiff failed to plausibly allege that the banks and Schroeder were aware of the fraud. Additionally, Plaintiff argues that the banks and Schroeder did not have a reasonable belief because they failed to follow proper procedures to verify Plaintiff's identity or confirm that she wanted to be a party to the loan. But whether the banks and Schroeder followed proper procedures goes more to the enforceability of the loans than to

whether Defendants reasonably believed that they had a permissible purpose. From the banks' and Schroeder's perspective, D. Kruckow's husband asked for a loan for which he and his wife would be liable. If a business does not violate FCRA when an identity thief causes the business to obtain a credit report, then the Court is hard pressed to find a violation in this scenario. Thus, absent plausible allegations that the banks and Schroeder knew or should have known about the fraud, the Court concludes that they had a reasonable belief that they had a proper purpose to obtain D. Kruckow's credit report in February and November 2013.

Second, Plaintiff argues that even if the Banks and Schroeder had a proper purpose to obtain a credit report, they exceeded that purpose when they performed a hard pull of Plaintiff's credit instead of a soft pull. A hard pull gives the business more information about the consumer's credit and the inquiry shows up on the consumer's credit report, while a soft pull provides less information and does not appear on a credit report. Defendants aver that they obtained the February and November 2013 credit reports via a hard pull as part of routine monitoring, which is a permissible purpose. *See* 15 U.S.C. § 1681b(a)(3)(A). Plaintiff argues that only a soft pull should be used as part of an account review. (Opp. at 28-29.) Defendants argue that FCRA does not distinguish between hard and soft credit pulls.

Plaintiff points to 15 U.S.C. § 1681b(c) for the proposition that FCRA distinguishes between soft and hard credit pulls. Section 1681b(c) sets forth the procedure for credit reporting agencies to issue consumer reports for transactions not initiated by the consumer. For any credit or insurance transaction not initiated by the

consumer, § 1681b(c) provides that, unless authorized by the consumer, a credit reporting

agency can provide only limited information (name, address, identifier, and other

information so long as it does not identify the relationship or experience of the consumer

with respect to a particular creditor or other entity).  According to Plaintiff, this is a "soft

pull."  Section 1681b(c), however, deals with firm offers of credit or insurance—e.g.,

mailers with credit-card offers.  When, for example, a credit-card company wants to

identify potential customers, Congress has explicitly limited the information that credit

reporting agencies can provide.  *See Banga v. Equifax Info. Servs. LLC*, Civ.

No. 14-03038, 2016 WL 741963, at *7 (N.D. Cal. Feb. 25, 2016) (explaining the

statutory framework for credit offers).  Here, in contrast, there is no such limit:  Congress

explicitly set forth that a business seeking to review its accounts could obtain the

borrower's credit reports without a limitation on hard or soft pulls.  *Cf. Thiessen v. Blatt,*

*Hasenmiller, Leibsker & Moore, LLC*, Civ. No. 14-5520, 2015 WL 3643989, at *3 (E.D.

Pa. June 12, 2015) ("The terms 'hard' or 'soft' do not appear anywhere in [FCRA]. There

is no differentiation in the statute.").  While an industry practice may have developed, the

Court concludes that absent specific contract language limiting the credit report to a soft

pull, a lender monitoring loan accounts does not violate FCRA by obtaining the

borrower's credit report via a hard pull.  Thus, Plaintiff has failed to state a FCRA claim

on the basis that the banks and Schroeder performed a hard pull of her credit.  And

because the banks and Schroeder had a reasonable belief that they had a permissible

purpose to obtain the February and November 2013 credit reports, the Plaintiff has failed

to plausibly allege a FCRA violation.  The Court therefore dismisses Plaintiff's FCRA claims for the February 8, 2013 and November 8, 2013 credit reports.[7]

### 2.    October 2014 Report

For the October 2014 report, however, D. Kruckow has plausibly alleged an impermissible purpose.  Plaintiff alleges that Schroeder obtained her credit report for P. Kruckow to use in the divorce proceedings, which he commenced in early December 2014.  If Plaintiff's allegations are true, then Schroeder would not have had a legitimate business purpose to obtain Plaintiff's credit report.  *See, e.g.*, *Cole v. Am. Family Mut. Ins. Co.*, 410 F. Supp. 2d 1020, 1023 (D. Kan. 2006) (concluding that obtaining a spouse's consumer report for a divorce proceeding was not a legitimate business need under FCRA); *Thibodeaux v. Rupers*, 196 F. Supp. 2d 585, 592 (S.D. Ohio 2001) (same). Moreover, the Court is not faced with the same plausibility issues that it faced with the two other credit reports.  First, the October 2014 credit report was not obtained near in time to any new loan.  Second, the credit report was obtained shortly before the divorce petition was filed.  And third, the Court finds it plausible that Schroeder—allegedly one of P. Kruckow's friends—would obtain a credit report as a favor for P. Kruckow.  Thus,

---

[7]    In her Amended Complaint, Plaintiff alleges that P. Kruckow obtained or used the November 8, 2013 credit report.  (Am. Compl. 110.)  P. Kruckow moved to dismiss both FCRA claims.  In her opposition, Plaintiff focuses on only the October 31, 2014 credit report.  (Opp. at 27.)  Thus, Plaintiff abandoned her FCRA claim against P. Kruckow for the November 8, 2013 credit report.  *See Guzman v. Great S. Bank*, Civ. No. 13-3353, 2014 WL 1775740, at *2 n.3 (D. Minn. May 5, 2014).  The Court therefore dismisses the FCRA claim against P. Kruckow for the November 2013 credit report as well.

the Court finds that D. Kruckow has plausibly alleged that P. Kruckow, Rushford Bank, and Schroeder did not have a permissible purpose to obtain the October 2014 credit report.

In support of their motions, Rushford Bank and Schroeder argue that the Court can conclude that they had a reasonable, good-faith belief that they had a proper purpose despite D. Kruckow's plausible allegations. Neither Rushford Bank nor Schroeder supplies any evidence to support these averments. Likewise, P. Kruckow argues that D. Kruckow's FCRA claim for the October 2014 report fails because the report has not been discovered in their divorce action. The Court, however, cannot resolve these issues merely on the basis of Defendants' statements in their motion papers. Because D. Kruckow adequately alleged a FCRA claim for the October 2014 report, and Defendants presented no evidence to demonstrate that they had a proper purpose to obtain that credit report, the Court denies Defendants' motion to dismiss the FCRA claim for the October 2014 report.

### C.     Invasion of Privacy

Plaintiff also brought a claim for invasion of privacy based on the banks issuing loans and Defendants obtaining D. Kruckow's credit report. (Am. Compl. ¶ 116.) Under Minnesota law, invasion-of-privacy claims have three elements: "(a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy." *Swarthout v. Mut. Serv. Life Ins. Co.*, 632 N.W.2d 741, 744 (Minn. Ct. App. 2001). Defendants Schroeder and the banks argue that D. Kruckow has failed to plead an intrusion because they had a good faith basis for obtaining the credit

16

report and issuing the loans. Additionally, they argue that D. Kruckow has failed to allege facts to show the intrusion was highly offensive.[8]

"An intrusion occurs when an actor believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *Fletcher v. Price Chopper Foods of Trumann, Inc.*, 220 F.3d 871, 876 (8th Cir. 2000) (internal quotations omitted) (applying Arkansas law, which like Minnesota, follows the Restatement); *accord Hutar v. Capital One Fin. Corp.*, Civ. No. 15-2100, 2015 WL 4868886, at *8 (D. Minn. July 27, 2015) (quoting *Fletcher*), *report and recommendation adopted*, Civ. No. 15-2100, 2015 WL 4937347 (D. Minn. Aug. 12, 2015). Here, D. Kruckow has failed to plausibly allege that the banks or Schroeder intentionally intruded on D. Kruckow's privacy by issuing the loans. For D. Kruckow to have plausibly pleaded such a claim, she would have had to allege facts that demonstrated why the banks would lend money knowing that one of the borrowers did not agree to be liable for the loans. Because D. Kruckow failed to plausibly allege an invasion of privacy based on the banks issuing the loans, the Court dismisses that claim against the banks and Schroeder.

---

[8]     Defendants also argue that the invasion-of-privacy claim is preempted by § 1681h(e), but that preemption applies to only disclosures required to be made by FCRA. "It makes sense that acts required to be done by the FCRA are immunized from state tort liability. But Plaintiff's intrusion claim is based on an allegedly *illegal* disclosure—a disclosure made under false pretenses. The facts underlying that claim are completely opposite from a disclosure *required* to be made, so section 1681h(e) is in no way implicated." *McAnly v. Middleton & Reutlinger, P.S.C.*, 77 F. Supp. 2d 810, 814-15 (W.D. Ky. 1999). Here, Section 1681h(e) does not apply because the allegations relate to Defendants obtaining consumer reports and not Defendants reporting information. Thus, Defendants' preemption argument fails.

Likewise, the Court dismisses D. Kruckow's invasion-of-privacy claims for her February 8, 2013 and November 8, 2013 consumer reports. D. Kruckow has failed to plausibly allege that the Defendants had an impermissible purpose in obtaining those consumer reports. *Hutar*, 2015 WL 4868886, at *8 ("Where a defendant has a permissible purpose, which the moving defendants had here, to obtain a credit report, dismissal of an intrusion-upon-seclusion claim is appropriate."). Thus, the Court dismisses D. Kruckow's invasion-of-privacy claims against Schroeder and the banks for the February and November 2013 reports.

The Court, however, finds that D. Kruckow has plausibly pleaded an invasion-of-privacy claim for the October 31, 2014 report against Defendants Rushford Bank, Schroeder, and P. Kruckow. As explained above, the Court concludes that D. Kruckow has plausibly alleged that Defendants obtained the October 31, 2014 report for an impermissible purpose—to be used by P. Kruckow in the divorce proceedings. Because Defendants allegedly had an impermissible purpose, the Court concludes that D. Kruckow has adequately alleged an intrusion into her privacy for the October 31, 2014 report.

Defendants Rushford Bank and Schroeder argue that even if obtaining the report was an intrusion, D. Kruckow has failed to show that it was highly offensive. Whether an intrusion is highly offensive is generally a question of fact for the jury. *Swarthout*, 632 N.W.2d at 745. And even the courts that conclude before trial that an intrusion was not highly offensive wait until a motion for summary judgment. *See, e.g.*, *Eaton v. Cent. Portfolio Control, Inc.*, No. 14-747, 2014 WL 6982807, at *3 (D. Minn. Dec. 9, 2014)

18

(collecting cases). Here, D. Kruckow has alleged that Defendants Rushford Bank, Schroeder, and P. Kruckow invaded her privacy by obtaining sensitive information in her credit report. Whether that invasion proves highly offensive will turn on what information was obtained. At the very least, the Court will not resolve that issue on a motion to dismiss. *See Swarthout*, 632 N.W.2d at 745. Thus, the Court denies the Rushford Bank's and Schroeder's motions to dismiss for Plaintiff's invasion-of-privacy claim as it relates to the October 31, 2014 credit report. [9]

### D.    Negligence

D. Kruckow also alleges that the banks and Schroeder were negligent in issuing the loans to P. Kruckow. Specifically, D. Kruckow alleges that the banks and Schroeder owed a duty to: (1) require loan co-signers to be present; (2) ensure that co-signers are informed of the nature and extent of their liability; and (3) ensure that the loan documents do not leave the bank. (Am. Compl. ¶ 133.) The banks and Schroeder concede that such rules make good business sense, but argue that no such legal duty exists. In her opposition, D. Kruckow claims the banks' and Schroeder's obligations came from a general duty of care. Banks, however, do not owe a general duty to borrowers.

*Dunnigan v. Fed. Home Loan Mortg. Corp.*, 184 F. Supp. 3d 726, 739 (D. Minn. 2016);

---

[9]     Plaintiff also alleges that P. Kruckow invaded Plaintiff's privacy by obtaining the loans and consumer reports. (Am. Compl. ¶ 116.) P. Kruckow moved to dismiss the invasion-of-privacy claims solely on the basis that the Court has discretion to dismiss cases when the Court dismisses the claim giving rise to federal jurisdiction—in this case, Plaintiff's FCRA claims. Because the Court did not dismiss all of Plaintiff's FCRA claims, the Court has jurisdiction to hear the supplemental claims. The Court therefore denies P. Kruckow's motion to dismiss the supplemental claims on the basis of the Court's jurisdiction.

*see also Roers v. Countrywide Home Loans, Inc.*, 728 F.3d 832, 838 (8th Cir. 2013) ("The general rule in Minnesota is that lenders bear no fiduciary duty to borrowers." (internal quotation marks omitted)).  Thus, D. Kruckow's negligence claim fails, and the Court dismisses it.

### E.    Vicarious Liability

The banks move to dismiss Plaintiff's claim that they are vicariously liable for Schroeder's actions.  "[I]n Minnesota, an employer may be held liable for even the intentional misconduct of its employees when (1) the source of the attack is related to the duties of the employee, and (2) the assault occurs within work-related limits of time and place."  *Fahrendorff ex rel. Fahrendorff v. N. Homes, Inc.*, 597 N.W.2d 905, 910 (Minn. 1999) (internal quotations omitted); *accord Yath v. Fairview Clinics, N.P.*, 767 N.W.2d 34, 47 (Minn. Ct. App. 2009); *see also Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 966 (6th Cir. 1998) (concluding that traditional principals of vicarious liability apply to FCRA claims).  "The critical inquiry to determine if the source of the harm is related to the duties of the employee is whether the employee's acts were foreseeable." *Yath*, 767 N.W.2d at 47.  Whether an employee's actions are foreseeable is a question of fact.  *Id.*  But if the underlying claim against the agent-employee is dismissed, then the claim for vicarious liability against the principal-employer must likewise be dismissed. *Breese v. TRIADvantage Credit Servs.*, Inc., 393 F. Supp. 2d 819, 823 (D. Minn. 2005). Here, the Court dismisses Plaintiff's vicarious liability claims against the banks to the same extent that the Court dismissed the FCRA claims, invasion-of-privacy claims, and negligence claims against Schroeder.

What's left then is Plaintiff's claim for vicarious liability for the FCRA and invasion-of-privacy claims arising from the October 31, 2014 credit report. Rushford Bank cites to *Kodrick v. Ferguson*, 54 F. Supp. 2d 788 (N.D. Ill. 1999) for the proposition that vicarious liability does not apply to FCRA. In *Kodrick*, a senior loan officer used a bank's account to obtain a credit report of her husband's ex-wife. *Id.* at 789. Kodrick sought to hold the bank vicariously liable. *Id.* Kodrick argued that the bank was liable because it negligently allowed the employee to obtain the report under false pretense. *Id.* Kodrick did not argue that bank supervisors knew about the employee's actions, that the employee occupied a position at the bank that rendered her an alter ego, or that the bank was reckless. *Id.* at 797-98. Based on those limited facts (which were not in dispute), the court concluded that the bank was not vicariously liable for the employee's actions. *Id.*

Here, in contrast, the parties do not agree on the facts underlying Schroeder's role in obtaining the consumer report or Rushford Bank's oversight of Schroeder. Likewise, whether Schroeder's actions were foreseeable is a question of fact. *Yath*, 767 N.W.2d at 47 ("Just because an employee's ultimate actions may be motivated by personal gratification and prohibited by the employer does not mean that those actions fall outside the scope of employment as a matter of law." (quoting *Fahrendorff*, 597 N.W.2d at 911)). It could be the case that Rushford Bank did everything correctly and that Schroeder violated a number of bank policies to help P. Kruckow. But the Court cannot resolve these issues on a motion to dismiss when so many facts are in dispute. Thus, the Court

21

denies Rushford Bank's motion to dismiss D. Kruckow's claim for vicarious liability for the October 2014 consumer report.

### F.    Civil Conspiracy

Plaintiff also brought a claim against Defendants for civil conspiracy. "To establish civil conspiracy, a claimant must show that two or more people worked together to accomplish (1) an unlawful purpose or (2) a lawful act by unlawful means." *Robert Allen Taylor Co. v. United Credit Recovery, LLC*, Civ. No. A15-1902, 2016 WL 5640670, at *11 (Minn. Ct. App. Oct. 3, 2016) (citing *Harding v. Ohio Cas. Ins. Co.*, 41 N.W.2d 818, 824 (Minn. 1950)). Civil conspiracy is not an independent claim and is instead a theory of liability premised on an underlying tort claim. *Leiendecker v. Asian Women United of Minn.*, 848 N.W.2d 224, 228 n.2 (Minn. 2014). Thus, if the underlying tort is dismissed, then the claim for civil conspiracy is also dismissed. *United Credit Recovery*, 2016 WL 5640670, at *11 (citing *D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn. App. 1997)). Here, to the extent that the Court has dismissed the underlying FCRA, invasion-of-privacy, and negligence claims, the Court likewise dismisses the claim for civil conspiracy.

All that remains are the civil conspiracy claims for the FCRA and invasion-of-privacy claims tied to the October 31, 2014 credit report. Because D. Kruckow has alleged that Schroeder agreed to obtain the consumer report to help P. Kruckow in the divorce proceedings, D. Kruckow has plausibly pleaded a claim for

civil conspiracy.  The Court therefore denies Defendants' motion to dismiss to the extent

it seeks to dismiss the civil conspiracy claim for the remaining claims.[10]

## CONCLUSION

Based on the foregoing, the Court dismisses with prejudice Plaintiff's claims

related to the February and November 2013 credit reports.  Additionally, the Court

dismisses with prejudice Plaintiff's negligence claim.  What remains after this order are

Plaintiff's claims for the October 31, 2014 credit report and Plaintiff's claims against

P. Kruckow for invasion of privacy, which P. Kruckow did not move to dismiss.

## ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED**

that:

1.    Merchants Bank's Motion to Dismiss (Doc. No. [45]) is **GRANTED IN**

**PART** and **DENIED IN PART** as follows:

a.    Merchants Bank's Motion to Dismiss for Lack of Subject

Matter jurisdiction is **DENIED**.

b.    Merchants Bank's Motion to Dismiss for Failure to State a

Claim is **GRANTED**.

---

[10]    To the extent that Rushford Bank argues that Schroeder could not enter the conspiratorial agreement on Rushford Bank's behalf, that argument raises question of fact that will need to be addressed at a later stage.  *See Damon v. Groteboer,* Civ. No. 10-92, 2011 WL 886132, at *4 (D. Minn. Mar. 14, 2011).

c.      Plaintiff's Amended Complaint (Doc. No. [35]) is

**DISMISSED WITH PREJUDICE** to the extent that it brought claims

against Merchants Bank.

d.      Merchants Bank is **DISMISSED** as a party to this action.

2.      Paul Kruckow's Motion to Dismiss (Doc. No. [50]), Rushford State Bank's

Motion to Dismiss (Doc. No. [58]), and Craig Schroeder's Motion to Dismiss (Doc.

No. [62]) are **GRANTED IN PART** and **DENIED IN PART** as follows:

a.      The Motions to Dismiss for Lack of Subject Matter

Jurisdiction are **DENIED**.

b.      The Motions to Dismiss for Failure to State a Claim are

**GRANTED IN PART** and **DENIED IN PART**.  Consistent with the

Court's Memorandum Opinion, the Court **DISMISSES WITH**

**PREJUDICE** claims in the Amended Complaint (Doc. No. [35]) as

follows:

i.      Count I—FCRA Violation—against Defendants

Paul Kruckow, Schroeder, and Rushford State Bank for the

February and November 2013 credit reports.

ii.      Count II—Invasion of Privacy—against

Schroeder and Rushford State Bank for the February and

November 2013 credit reports and for issuing the loans.

iii.      Count IV—Civil Conspiracy—against

Defendants Paul Kruckow, Schroeder, and Rushford State

24

Bank to the extent that the Court has dismissed the underlying claims.

       iv.        Count V—Negligence—against Defendants Schroeder and Rushford State Bank in its entirety.

       v.        Count VI—Vicarious Liability—against Rushford State Bank to the extent that the Court has dismissed the underlying claims.

Dated:  July 19, 2017          s/Donovan W. Frank
                             DONOVAN W. FRANK
                             United States District Judge